## GIFFORD v. GIFFORD, ADMINISTRATRIX.

[No. 8,725. Filed December 22, 1914. Rehearing denied May 7, 1915.]

1. APPEAL.—*Record.*—*Ruling on Demurrer.*—*Waiver of Objections.* —Where the record on appeal discloses the filing of an amended complaint several weeks after the act requiring a demurrer for want of facts to be accompanied by a memorandum of defects (§344 Burns 1914, Acts 1911 p. 415) went into effect, and does not disclose anything as to the filing of the original complaint, the court can not infer that such original complaint was filed prior to the taking effect of such act, and hence must treat objections to the sufficiency of the amended complaint as waived, in the absence of a memorandum accompanying the demurrer thereto. p. 671.

2. WITNESSES.—*Privileged Communications.*—*Husband and Wife.*— A communication made by a husband to his wife, and not shown to have been made out of the presence of third parties under such circumstances as to bring it within the prohibition of subd. 6, §520 Burns 1914, §497 R. S. 1881, is not inadmissible as being a privileged communication. p. 672.

3. WITNESSES.—*Privileged Communications.*—*Husband and Wife.*— A communication made by a husband to his wife relating to a business transaction, and which has no necessary relation to or dependence upon the mutual trust and confidence of husband and wife, is not inadmissible in evidence under subd. 6, §520 Burns 1914, §497 R. S. 1881, excluding communications between husband and wife. p. 672.

4. EVIDENCE.—*Self-Serving Declarations.*—*Explanation of Possession.*—In an action to recover for services of a decedent and expenditures made by him while in the possession of land, where the fact of possession was not in dispute, and the only controversy relating thereto was whether the possession was that of a tenant or pursuant to a contract by which decedent was to receive land for his services and expenditures, the declarations of decedent made while in possession, and explanatory thereof, were not

admissible as tending to prove the contract under which the services were rendered and expenditures made, since, the fact of possession being immaterial and incompetent, such declarations were not within the exception to the rule excluding self-serving declarations making them admissible to explain possession. pp. 673, 675.

5. EVIDENCE.—*Res Gestae.*—*Declarations of Party in Possession.*—Where the facts and circumstances of a case are such as to render the nature and character of possession equivocal, and possession is material to any issue involved, the declarations or statements of the party in possession, which immediately accompany and characterize such possession, are competent as part of the *res gestae.* p. 674.

6. EVIDENCE.—*Declarations.*—*Admissibility.*—*Self-Serving Declarations.*—The declarations of a party are admissible only when the acts or transactions which they accompany or characterize are competent and material evidence under the issues, and in such case they will be admitted even though they are self-serving declarations made out of the presence of the adverse party. p. 674.

7. HUSBAND AND WIFE.—*Contracts.*—*Joint Liability.*—*Declarations of Husband.*—*Admissibility in Action Against Wife.*—A complaint in an action against a widow alleging that defendant and her deceased husband were the owners by entirety of certain land and that they jointly and severally agreed with plaintiff's decedent, in consideration of services to be rendered and money to be expended by the latter for their benefit and the protection of their joint property, to devise to him a certain portion of such land, shows a contract which a married woman could make, and by which she would be bound primarily and jointly as principal with her husband, thus making, on *prima facie* proof of such contract, the declarations of defendant's husband relative thereto, and tending to prove some fact in issue, admissible, though made out of her presence. p. 677.

8. EVIDENCE.—*Admissions.*—*Parties Jointly Interested or Liable.*—Where parties are jointly interested, or have a privity of design, and act together in a transaction for their benefit or the accomplishment of some purpose, or where they are jointly liable on some contract or obligation, the declarations or admissions of one of such parties relating to such transaction or obligation, made out of the presence of the other, are competent against all the parties so interested or obligated, but a mere community of interest is insufficient to make such admissions admissible against all. p. 678.

9. EVIDENCE.—*Admissions.*—*Preliminary Evidence.*—Where it is sought to bind one party to a joint contract or arrangement by

the declarations of another party thereto, who is not a party to the suit, there must be *prima facie* proof that a joint contract or arrangement was entered into, and such declarations must be pertinent to some issue other than the existence of such joint contract or interest. p. 679.

10. EVIDENCE.— *Admissions.*— *Effect of Proof.*— Admissions by a party jointly bound with another, which are admissible as tending to prove some other fact in issue, should not be excluded because they also tend to prove the joint contract or interest. p. 679.

11. EVIDENCE.— *Joint Contract.*— *Admissions.*— In an administrator's action for services rendered and money expended by decedent while in possession of his parents' farm, evidence showing that before the farm was purchased the parents had him look at it, and would not buy until he was satisfied and willing to live on it; that title was taken by the parents jointly; that decedent with his family and parents soon moved on the farm, but resided in separate houses until his father's death; that he and his family rendered services not usually rendered by tenants; that both parents accepted the services and executed wills of a part of the farm to him; that the mother said he could make repairs as he pleased, for the farm was to be his anyway; that he would be well paid for his work some day; that when her attention was called to his services to his father during sickness, she stated that was provided for in the will; that she continued to accept the benefits of the arrangement after her husband's death, and that the son expended money before and afterwards with her knowledge and approval; warranted the inference of a joint contract or interest on the part of the parents so as to render competent against the mother declarations by the father in favor of decedent, made out of her presence, to the effect that he had his business fixed up and that decedent was to get a part of the land, etc., as tending to prove the contract had been recognized and executed, in part at least, by decedent's rendition of services, and by the father fixing his business so that decedent was to get the land for caring for his parents, though such declarations were not competent for the purpose of proving the contract. p. 679.

12. APPEAL.—*Review.*—*Sufficiency of Evidence.*—The sufficiency of evidence is for the court or jury trying the case and the verdict or decision will not be disturbed on appeal on the ground of insufficient evidence, if there is any evidence to support it. p. 682.

From Monroe Circuit Court; *Robert L. Mellen,* Special Judge.

Action by Effie Gifford, administratrix of the estate of

Otho Gifford, deceased, against Martha Gifford. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*J. E. Henley* and *Miers & Corr,* for appellant.

*Rufus H. East* and *John F. Regester,* for appellee.

FELT, J.—This suit was brought by Effie Gifford, administratrix of the estate of Otho Gifford, deceased, against appellant, Martha Gifford, and Benjamin F. Gifford, to recover for certain services alleged to have been rendered appellant and her husband, Absalom Gifford, whose death occurred before that of appellee's decedent. The amended complaint on which the case was tried was in three paragraphs. Benjamin F. Gifford filed an answer disclaiming any interest in the real estate described in appellee's complaint. Appellant filed answer in twelve paragraphs, the first of which was a general denial. The answers set up in different ways, pleas of payment, suretyship, coverture, and the six-year statute of limitations. Demurrers to the special answers were overruled. The issues were closed by a reply in general denial to each paragraph of special answer. The case was tried by the court without a jury and resulted in a finding and judgment for appellee in the sum of $750 against appellant, Martha Gifford, and in favor of Benjamin F. Gifford for costs. Appellant made a motion for a new trial which was overruled and an exception duly reserved.

The errors relied on for reversal are, (1) overruling the demurrer to the amended complaint, (2) overruling appellant's motion for a new trial, and (3) overruling appellant's motion to modify the judgment. The grounds of the motion for a new trial relied on for reversal are, (1) that the finding of the court is not sustained by sufficient evidence, (2) error in the assessment of the amount of the recovery, the same being too large, and (3) error in the admission of certain evidence and in refusing to strike the same out of the record.

The first paragraph of amended complaint shows that ap-

pellee, Effie Gifford, is the widow of Otho W. Gifford, deceased, who was a son of appellant and Absalom Gifford, deceased, who died on October 20, 1907; that said Effie is the duly appointed and acting administratrix of the estate of Otho W. Gifford, deceased, who died in June, 1910; that in 1899, Absalom and Martha Gifford became and continued the owners in fee simple, as tenants by entireties, of 100 acres of real estate in Monroe County, Indiana, until the death of said Absalom; that appellee and her husband for fifteen years prior to his death made their home with Martha and Absalom Gifford, during all of which time appellee and her husband rendered valuable services for her husband's father and mother in the way of work on their farm, cutting wood, feeding and caring for their live stock, waiting upon and nursing Absalom and Martha in sickness; that appellee, the wife of said Otho W. Gifford, at his special instance and request and at the request of Martha and Absalom Gifford, did the housework, ironing, and sewing for Martha and Absalom; that appellee and her husband had two children, Donald, aged 14 years, and Gretta, aged 7 years, who also rendered valuable services for Martha and Absalom; that all of the services so rendered as aforesaid were of the value of $500; that during all of the time, Absalom was ill with kidney trouble and asthma, unable to do work and during the last eighteen months of his life, he was sick and almost helpless and required a great deal of care and nursing, which services were rendered by his son Otho W., and the members of his family and were of the value of $100 per month; that he left no personal estate of any kind and his estate was never administered upon; that nothing was paid Otho W. Gifford or the members of his family for any of the services so rendered as aforesaid; that many years prior to the death of Absalom, he and his wife, in consideration of the services already rendered as aforesaid and in consideration that Otho W. and the members of his family would continue like services during the remainder of the

lives of Absalom and Martha and in further consideration of the payment of the taxes on said 100 acres of real estate and the interest on a mortgage thereon for $600, Absalom and Martha both jointly and severally promised and agreed with said Otho W. Gifford that they would execute their last wills and testaments and thereby devise to the said Otho W. Gifford the sixty acres of said 100 acres on which the buildings were located, particularly describing the same; that the sixty acres are of the value of $5,000; that in reliance on the agreement, Otho W. and his family continued to perform the services and paid the interest and taxes and made improvements on the land; that about the year of 1906 said Absalom and Martha placed Otho W. Gifford in full possession and control of the real estate, which possession and control continued without interruption until the death of Otho W. in June, 1910; that after the death of Absalom Gifford, Martha Gifford continued to live with Otho W. and family and Otho W. and family continued to perform the services aforesaid and Martha continued to accept the same and ratified the joint contract so made as aforesaid; that after the death of Absalom, Otho W. paid to Martha $100 per annum as cash rent for the 100 acres and continued to pay the interest and taxes as aforesaid and to improve the land; that immediately after the death of Otho W., Martha destroyed said wills and repudiated the agreement· so made as foresaid and refused to be bound thereby and executed another will by which she devised all of said 100 acres of real estate to the defendant Benjamin F. Gifford; that she thereupon ousted Effie Gifford and her children from the real estate and denied her the possession of any part thereof; that Martha Gifford is indebted to plaintiff as such administratrix in the sum of $5,000; that Otho W. paid taxes and made improvements worth $1,000 and paid interest on the mortgage amounting to $400. Prayer for $10,000 and that a lien be declared on said sixty acres of real estate therefor and that the same be sold in

satisfaction thereof. The other paragraphs are substantially the same as the first, except it is alleged in the second para- graph that "the said Absalom and Martha Gifford did sell, transfer and agree to devise by will, to said Otho W. Gifford, sixty acres of said real estate above described, upon which the improvements were situated."

The objections urged against the complaint are that it is a suit on an account and no bill of particulars is filed with or made a part of the complaint; that the first para-

1. graph shows that the two families lived together un- der such circumstances as to require an express con- tract to pay for the services rendered, and fails to allege any such contract. The record does not disclose the date of the filing of the original complaint, or that any such com- plaint was filed, but it does show that the amended complaint on which the case was tried was filed on June 13, 1911. The act of 1911 (Acts 1911 p. 415, §344 Burns 1914), requiring a memorandum of objections to accompany a demurrer to a complaint for insufficiency of facts, in order to save any question relating to the ruling thereon, went into effect on April 21, 1911. While we may infer that a complaint was filed prior to the filing of the amended complaint, we are not warranted in holding that the original complaint was filed prior to April 21, 1911. No memorandum accompanies the demurrer, and as the only complaint shown by the record was filed subsequent to the taking effect of the act, all objections to the sufficiency of the complaint are deemed waived in accordance with the provisions of said act.

Error of the trial court in the admission of certain evi- dence is urged by appellant. Effie Gifford, the surviving wife of Otho W. Gifford, was permitted over appellant's objection, to testify to certain declarations of said decedent, Otho W. Gifford, made in his lifetime, relating to his posses- sion of, and right to, the real estate on which they then resided, and which it was alleged was to become the property of Otho in payment for services rendered appellant and her

husband in their lifetime. The substance of the evidence so admitted, is to the effect that Otho W. Gifford when in failing health and while in possession of the farm was urged to go away for his health and said to his wife that he would not go away unless she stayed and held possession of the place; that he had put his whole life in the farm and could not afford to lose it; that she told him he would not get anything out of it and he told her he would; that if anything happened to him he wanted something left for his family; that she said his mother would not let them have it and he replied that, if she did not know enough to do what was right, the law would compel her to do what was right; that he believed his father would have deeded him the farm if it had not been for his Uncle George; that Absalom Gifford had said to him that he had made provision for him for taking care of Martha Gifford, his mother. The objection urged was that the evidence consisted of self-serving declarations of Otho W. Gifford made out of the presence of the adverse party and therefore not admissible in his own behalf or on behalf of his legal representative; also that the statements were not admissible because they were privileged communications between husband and wife; that they were no part of the res gestae of any transaction involved in the issues and were mere hearsay evidence.

The objection that the evidence was not admissible because the statements received were confidential communications between husband and wife is not tenable. In the first place, it does not appear that the statements were made out of the presence of third parties under such circumstances as to bring them within the prohibition of subd. 6, §520 Burns 1914, §497 R. S. 1881, excluding communications of husband or wife made to each other.

In the second place, the statements relate to a business transaction which was not intended to be private and which, under numerous decisions of our Supreme Court, do not come within the prohibition of the statute.

Where what is said or done by either has no necessary relation to or dependence upon the mutual trust and confidence of husband and wife, the reason for secrecy ceases and the statute does not apply. *Schmied* v. *Frank* (1882), 86 Ind. 250, 257; *Mitchell* v. *Colglazier* (1886), 106 Ind. 464, 467, 7 N. E. 199; *Beitman* v. *Hopkins* (1887), 109 Ind. 177, 178, 9 N. E. 720; *Stanley* v. *Stanley* (1887), 112 Ind. 143, 144, 13 N. E. 261; *Reynolds* v. *State* (1897), 147 Ind. 3, 8, 46 N. E. 31; *Beyerline* v. *State* (1897), 147 Ind. 125, 130, 45 N. E. 772.

Appellee, in response to the objection that the evidence consists of self-serving declarations, contends that it falls within well-established exceptions to the rule excluding self-serving declarations made out of the presence of the adverse party, viz., (a) where such declarations accompany and are explanatory of an act admissible in evidence and (b) where the declarations are a part of the *res gestae* of the transaction. It is contended that possession of the real estate by Otho W. Gifford was a continuous act and that his statements, tending to explain the nature and character of his possession, made while in possession of the land that he claimed was promised him for his services and expenditures, were competent evidence. Appellant admits the exceptions to the general rule aforesaid but claims they have no application to the case at bar because the possession of Otho W. Gifford was that of a tenant and the title to the real estate was not in issue, the suit being for the recovery of money alleged to be due on account for services rendered and money expended. The title to the real estate was not in question, nor was it disputed that Otho W. Gifford was in possession of the farm under some arrangement with his parents. It was claimed on behalf of appellee that he took and held possession concurrently with his parents under an arrangement by which he farmed the place on terms agreed upon between him and his parents and in pursuance

of which he was to receive for his services rendered and to be rendered his parents, the sixty acres of the 100 acres owned by his parents, upon which the buildings stood. Appellant claims that his possession was that of an ordinary tenant and that such possession did not render competent any statements made by him in any way explaining or qualifying his possession.

It is contended by appellee that the facts and circumstances of the case are such as to render the nature and character of his possession equivocal. Where such is the case and the possession is material to any issue involved, any declarations or statements of the party in possession which immediately accompany and characterize such possession are competent as a part of the *res gestae*. Such statements are sometimes characterized as "verbal acts", because they tend to characterize a particular act or transaction or to show the intention with which such act was performed. Such statements are only admissible when the acts or transactions which they accompany or characterize are competent and material evidence under the issues, and when such is the case, they are admissible in evidence though they may be self-serving declarations. In such instances their admission is treated as an exception to the general rule which excludes self-serving declarations made out of the presence of the adverse party. 2 Ency. Evidence 387; Jones, Evidence (2d ed.) §350 *et seq.; Creighton* v. *Hoppis* (1885), 99 Ind. 369, 370, 374; *Brown* v. *Kenyon* (1886), 108 Ind. 283, 285, 9 N. E. 283; *Durham* v. *Shannon* (1888), 116 Ind. 403, 407, 19 N. E. 190, 9 Am. St. 860; *Robbins* v. *Spencer* (1895), 140 Ind. 483, 491, 492, 495, 38 N. E. 522, 40 N. E. 263; *Burr* v. *Smith* (1899), 152 Ind. 469, 473, 53 N. E. 469; *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541, 548, 70 N. E. 888; *Baker* v. *Baker* (1909), 43 Ind. App. 26, 28, 86 N. E. 864; *Welker* v. *Appleman* (1909), 44 Ind. App. 699, 711, 90 N. E. 35.

There is no dispute about the fact of, or the right to, possession of the farm on the part of Otho W. Gifford. Both are conceded by all the parties. The only controversy 4. in regard to the possession relates to its nature and character, whether the possession was that of a tenant only, or in pursuance of a contract by which he was to receive sixty acres for services rendered and money expended under the contract. In *Robbins* v. *Spencer, supra,* the court passed upon the question of receiving in evidence the declarations of a deceased former owner of real estate in a partition suit. The question at issue was the execution of an alleged deed by which it was claimed such owner conveyed a part of the real estate in controversy to two of her sons, reserving to herself the life estate therein, and the court on page 493 of the opinion said: "Here the fact of possession by Eliza Robbins and her right to possession were wholly immaterial to the question in controversy, namely, whether she had in fact executed and delivered the deed to William M. and Anthony S. Robbins. Because, when the case was here before, it was adjudged, both times, that the legal effect of the deed was to vest in William M. and Anthony S. Robbins a fee simple, reserving a life estate therein to the grantor, and that she was thereby entitled to the possession during her life. *Robbins* v. *Spencer* [(1890), 121 Ind. 594, 22 N. E. 660]; *Spencer* v. *Robbins* [(1886), 106 Ind. 580, 5 N. E. 726]. Here the possession of Eliza Robbins was not equivocal, needing no explanation. If she had not in fact executed the deed to her two sons, it is conceded on all hands that she was the owner and entitled to the possession. If she had in fact executed the deed, she was entitled to the possession during her life, according to the terms of the deed. So that in any event, her possession was not equivocal, nor did it need explanation. Her possession had no bearing on the question in dispute as a fact, one way or the other. Her possession was consistent with either contention. It was not a material fact on either side of the

controversy. Therefore, possession not being a material fact, it was not competent, and could not be legally proven on either side to throw light on the question whether the deed had actually been executed. And, according to the case cited, declarations accompanying such possession are not competent. Her possession being consistent with her deed to her two sons, it was not equivocal, nor did it need any explanation why it should continue while the deed existed.''

In the case at bar, declarations of Otho W. Gifford made while in possession of the farm were received on the theory that his possession and accompanying declarations tended to prove the contract under which he claimed to occupy the farm and render the services for which he was to obtain title to sixty acres of land owned by his parents. Here the ultimate fact to be established was the alleged contract. If he held possession as a tenant only, or in pursuance of such contract, the fact of possession would be the same in either event. So we can not see how the fact of possession was material or competent evidence under the issues involved in this case, which is a suit upon account for services rendered and money expended. If that fact was not competent and material evidence, the declarations made while in possession explanatory thereof were not competent evidence, and do not fall within the exception which permits such declarations to be received in evidence, notwithstanding the rule excluding self-serving declarations. We therefore conclude that it was error to receive in evidence the statements and declarations of Otho W. Gifford, deceased, testified to by Effie Gifford, his widow. The declarations and statements of Otho W. Gifford made while in possession of the farm and testified to by other witnesses were in the nature of self-serving declarations, and some of them bore more directly on the questions at issue than the statements given in evidence by Effie Gifford, and, therefore, were inadmissible as evidence for the reasons already stated.

Objection is also made to the admission in evidence over the objection of appellant, of certain alleged statements made by Absalom Gifford in his lifetime and testified to by William D. Ward and Omer G. Bunger.

The substance of the evidence was to the effect that Absalom Gifford said to the witnesses that he had his business fixed up; that Otho was to get the sixty acres for taking care of the old folks and Frank was to get the forty that joined him. Martha Gifford objected on the ground that any conversation with, or declaration of, Absalom Gifford was not competent evidence against her, the sole defendant to the suit, and would in no way bind her. To determine the admissibility of this evidence requires consideration of the nature and character of the original contract alleged to have been entered into by Absalom and Martha Gifford on the one side and their son Otho W. Gifford on the other. The complaint alleges that they were the owners by entireties of 100 acres of real estate and that they jointly and severally agreed with Otho W. Gifford, their son, that in consideration of services rendered and services to be rendered by him and members of his family and the expenditure by him of certain money for their benefit and protection of their joint property, they would devise to him the sixty acres of said real estate on which the buildings stood; that the services were rendered; that they executed wills to carry out said agreement; that after the death of Absalom, Martha ratified the contract and continued to accept the benefits thereof until the death of Otho W. Gifford when she destroyed the wills made in pursuance of the contract and refused to abide thereby.

The averments of the complaint show a contract under which Absalom and Martha Gifford were jointly and primarily liable as principals. Facts are pleaded which show that the arrangement was beneficial to each and that the title to the real estate was held by them jointly as tenants by entireties; that the parties themselves interpreted and

acted upon the contract as joint and in pursuance of such construction each accepted the benefits and services stipulated in the agreement and executed wills to carry out the provisions of the alleged contract giving to Otho W. Gifford the sixty acres of their real estate on which the buildings stood. The averments show a contract which a married woman could make and by which Martha Gifford bound herself primarily, and jointly as principal, with her husband, and not an attempt to bind her as surety for her husband. *Druckamiller* v. *Coy* (1908), 42 Ind. App. 500, 504, 85 N. E. 1028; *Koh-i-noor Laundry Co.* v. *Lockwood* (1895), 141 Ind. 140, 40 N. E. 677; *Sharpe* v. *Baker* (1912), 51 Ind. App. 547, 566, 96 N. E. 627, 99 N. E. 44; *Security Co.* v. *Arbuckle* (1889), 119 Ind. 69, 71, 21 N. E. 469; *Indianapolis Traction, etc., Co.* v. *Kidd* (1906), 167 Ind. 402, 414, 79 N. E. 347, 7 L. R. A. (N. S.) 143, 10 Ann. Cas. 942.

Where parties are jointly interested, or have a privity of design, and act together in a transaction for their benefit or the accomplishment of some purpose, or where

8. they are jointly liable on some contract or obligation, the declarations or admissions of one of such parties relating to such transaction or obligation, made out of the presence of the other, are competent against all the parties so interested or obligated. However, a mere community of interest is not sufficient to make such admissions admissible against all. 1 Elliott, Evidence §246 *et seq.;* 1 Ency. Evidence 574 *et seq.;* Jones, Evidence (2d ed.) §§248-260; *Parker* v. *State, ex rel.* (1846), 8 Blackf. 292, 294; *Chapel* v. *Washburn* (1858), 11 Ind. 393, 395; *Dickerson* v. *Turner* (1859), 12 Ind. 223, 229; *Wonderly* v. *Booth* (1862), 19 Ind. 169, 170; *Hayes* v. *Burkam* (1879), 67 Ind. 359, 362; *Vannoy* v. *Klein* (1890), 122 Ind. 416, 418, 23 N. E. 526; *Indianapolis, etc., Traction Co.* v. *Wiles* (1910), 174 Ind. 236, 239, 91 N. E. 160, 729; *McMillan* v. *McDill* (1884), 110 Ill. 47, 51; *Mathews* v. *Phelps* (1886), 61 Mich.

327, 28 N. W. 108, 1 Am. St. 581. However, where it is sought to bind one party to such joint contract or arrangement by the declarations of another party thereto, who is not a party to the suit, there must be other proof of such joint contract or arrangement, for the reason that the existence of such contract can not be proven by such declarations. If the other evidence is sufficient to satisfy the trial court that *prima facie* proof of such joint contract or interest had been made, declarations of such other person so jointly interested or obligated may be received in evidence provided they are pertinent to any issue of the case on trial other than the existence of such joint contract or interest. While such declarations may not be received to prove the joint contract or interest in the first instance, if *prima facie* proof thereof has been made, and the declarations sought to be proven tend to prove or disprove some other fact in issue, they should not be excluded because they may also tend to prove such joint contract or interest. 1 Elliott, Evidence §§246-248, 250-253, 257; Jones, Evidence §§248, 249, 251, 323; *Coon* v. *Gurley* (1874), 49 Ind. 199; *Vannoy* v. *Klein, supra; Foster* v. *Gaston* (1890), 123 Ind. 96, 108, 23 N. E. 1092; *Federal Union Surety Co.* v. *Indiana, etc., Mfg. Co.* (1911), 176 Ind. 328, 333, 95 N. E. 1104; *Steele* v. *Michigan Buggy Co.* (1912), 50 Ind. App. 635, 639, 95 N. E. 435; *Boor* v. *Lowrey* (1885), 103 Ind. 468, 478, 3 N. E. 151, 53 Am. Rep. 519; *Costello* v. *Cave* (1834), 27 Am. Dec. 404, note; *Campbell* v. *Hastings, etc., Co.* (1874), 29 Ark. 512, 526; *Hilton* v. *McDowell* (1882), 87 N. C. 364; *Henslee* v. *Cannefax* (1872), 49 Mo. 295; *Reed, Crane & Co.* v. *Kremer* (1886), 111 Pa. St. 482, 5 Atl. 237, 56 Am. Rep. 295; *Smith* v. *Collins* (1874), 115 Mass. 388, 398.

In this case there was proof that before they purchased the farm in question Absalom and Martha Gifford had Otho look at it and would not complete the purchase until he expressed his satisfaction with it and willing-

ness to live upon it; that the title to the farm was taken in their names jointly; that Otho and his family and said Absalom and Martha soon after the purchase, moved on the farm, but resided in separate houses until the death of Absalom; that Otho and the members of his family rendered services for both Absalom and Martha, of a character and in amount, not usually rendered by a tenant and the members of his family; that Martha and Absalom both accepted the services and executed wills whereby they intended to give sixty acres of the farm to Otho; that Martha said Otho could make the repairs as he pleased for the farm was to be his anyway; that he had a great deal of work to do on the farm but he would be well paid for his extra work some day; that when her attention was called to the patience of Otho in waiting on his father in sickness, she said there was provision made for that in the will; that she continued to accept the benefits of the arrangement, in a slightly modified form, after the death of Absalom. for about three years and until the death of Otho. There was also evidence tending to prove the payment of taxes and interest, and the making of improvements, at his own expense, by Otho W., both before and after the death of Absalom, with the full knowledge and approval of Martha. The foregoing facts and circumstances are sufficient to warrant the inference of a joint contract, or of joint interest and action on the part of Absalom and Martha Gifford to secure the services of Otho and his family and the expenditure of money for the benefit of themselves and their joint property. It tends to prove that Martha knew that Otho was doing "extra work" and that provision had been made by will to compensate him therefor. Knowledge that payment for the services of Otho was provided for in the will, coupled with the fact of the execution of the wills by both Absalom and Martha, and the further fact that title to the real estate was in both their names, is sufficient not only to show that Martha knew and understood that the services

were not being rendered gratuitously but to warrant the inference that they were rendered in pursuance of a contract or arrangement by which she and her husband jointly obligated themselves as principals to provide compensation therefor. It is true that such evidence is not conclusive and that the inferences suggested are not the only ones that may be drawn from the facts and circumstances proven. But it is sufficient for the purpose of the question now under consideration if the inference of such joint contract or interest may reasonably be drawn from such facts and circumstances, and we hold that they are sufficient to warrant such inference. This conclusion, however, does not warrant the admission of the declarations of Absalom Gifford made out of the presence of appellant, if those declarations tend only to prove the joint contract or interest alleged in the complaint. We have carefully considered the declarations and hold that the statements of Absalom to the effect that he had his business fixed up and that Otho was to get the sixty acres for taking care of the old folks tend to prove not only that there was a contract by which Otho was to get the land, but also that the contract had been thereafter recognized and executed, in part at least, by the rendition of services on the part of Otho and by the fixing of his business, on the part of Absalom, so that Otho was to receive the sixty acres for services rendered in caring for himself and wife. We therefore hold that the declarations of Absalom were properly admitted in evidence. If the case was on trial by a jury, appellant would be entitled to an instruction to the effect that such declarations of Absalom could not be considered to prove the contract alleged in the complaint, as against Martha, the sole defendant, and could be considered only for the purposes already indicated. As supporting our conclusion, that the facts and circumstances above set out are sufficient to warrant the inference of a joint obligation on the part of Absalom and Martha Gifford, we cite: *Hamilton* v. *Hamilton's Estate* (1901), 26 Ind.

App. 114, 118, 59 N. E. 244; *Miller* v. *Miller* (1911), 47 Ind. App. 239, 241, 94 N. E. 243; *Stewart* v. *Small* (1894), 11 Ind. App. 100, 38 N. E. 826; *Schoonover* v. *Vachon* (1889), 121 Ind. 3, 5, 22 N. E. 777; *Wallace* v. *Long* (1886), 105 Ind. 522, 531, 5 N. E. 666, 55 Am. Rep. 222; *Eppert* v. *Gardner* (1911), 48 Ind. App. 188, 192, 93 N. E. 550.

The conclusions reached make it unnecessary to consider further the question of the sufficiency of the evidence to support the judgment. What we have said in deciding the questions relating to the evidence is sufficient to show that the judgment would not be reversed for insufficiency of the evidence, and to indicate that in the judgment of this court there is some evidence tending to support it. The 12. sufficiency of the evidence is for the court or jury trying the case and not for this court where there is any evidence to support the material averments of the complaint.

For the errors of the court in the admission of evidence, the judgment is reversed with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 107 N. E. 308. See, also, under (1) 3 Cyc. 291; 31 Cyc. 316; (2) 40 Cyc. 2353; (3) 40 Cyc. 2355; (4, 5) 16 Cyc. 1166; (6) 16 Cyc. 1202; (7) 21 Cyc. 1570; (8) 16 Cyc. 980, 982; (9) 16 Cyc. 1037; (12) 3 Cyc. 348.